JUDGE DAVID GUADERRAMA

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION



FILED

2023 JAN -3  PM 3: 20

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY

|  |  |
|---|---|
| **BRANDON CALLIER** | § |
|  | § |
| **Plaintiff,** | § |
|  | § |
| v. | § |
|  | § |
| **ELITE FINANCIAL SERVICES, INC. d/b/a** | § |
| **MASSACHUSETTES ELITE FINANCIAL** | § |
| **SERVICES, INC** a Massachusetts Corporation, | § |
| and **JASON F. VOCI** | § |
|  | § |
| **Defendants.** | § |
|  | § |

EP23CV0004

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2. Defendant ELITE FINANCIAL SERVICES, INC. d/b/a MASSACHUSETTES ELITE FINANCIAL SERVICES, INC. ("Elite") is a corporation organized and existing under the laws of Massachusetts with a principal address of 100 Cummings CTR, STE 141A, Beverly, MA 01915 and can be served via registered agent Corporation Services Company d/b/a CSC-Lawyers Inco at 211 E. 7TH Street, Suite 620, Austin, TX 78701.

3. Defendant JASON F. VOCI ("Voci") is a natural person, resident of Massachusetts and upon information and belief is the Chief executive officer, manager, and registered agent for Elite and can be served at 58 Curzon Mill Rd #60, Newbury Port, MA 01950.

1

4.      Defendants Elite and Voci are hereinafter referred to collectively as ("Defendants").

## JURISDICTION AND VENUE

5.  **Jurisdiction.**   This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v.*

*Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter

jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101

because that claim arises from the same nucleus of operative fact, i.e., Defendants automated

text messages to Plaintiff; adds little complexity to the case.

6.  **Personal Jurisdiction.**   This Court has specific personal jurisdiction over the Defendants

because they have repeatedly placed calls to Texas residents, derive revenue from Texas

residents, and sell goods and services to Texas residents, including the Plaintiff.  Defendants

purposefully place calls to Texas residents.

7.  **Venue.**   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a

substantial part of the events giving rise to the claims—the calls and sale of goods and services

directed at Texas residents, including the Plaintiff—occurred in this District and because the

Plaintiff resides in this District.  Residing in the Western District of Texas when he received a

substantial if not every single call from the Defendants that are the subject matter of this

lawsuit.

8.  This Court has venue over the Defendants because the calls at issue were sent by or on behalf

of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

9.  In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19. The FCC confirmed this principle in 2013 when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946,

4

951 – 52 (9th Cir. 2009).

21. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

22. The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

23. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

24. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

### FACTUAL ALLEGATIONS

25. Defendant Elite offers debt relief services to consumers nationwide.

26.    Defendant Elite is owned and operated by Defendant Voci.

5

27. As part of their marketing Defendant Elite sends automated text messages to thousands of consumers nationwide including in Texas *en mass* by using an automatic telephone dialing system ("ATDS") soliciting their debt relief services.

28. Defendants routinely violate the TCPA as part of their business model and knowingly and willfully commit TCPA violations.

29. Plaintiff personally successfully registered his phone number ending in 4604 on the National Do Not Call Registry in December 2007.

30. At all times relevant hereto, Plaintiff maintained, used, and was the subscriber of the residential cellular telephone number ending in 4604.

31. On August 9, 2022, Plaintiff received the first automated text message from Defendants. The text message did not address Plaintiff personally and ended with "ReplySTOPToEnd." The message eventually instructed Plaintiff to call phone number 866-668-6161 ext. 1002.

32. On December 9, 2022, Plaintiff received the second automated text message from Defendants. The text message did not address Plaintiff and ended with "ReplySTOPToEnd." The message eventually instructed Plaintiff to call phone number 866-668-6161 ext. 1002.

33. The text messages Plaintiff received from Defendants with "Replystop" (or some variation) are indicative of text messages sent via automated means that automated the process "STOP" requests.

34. The text messages Plaintiff received from Defendants do not identify the Defendants true identity.

35. The text messages Plaintiff received from Defendants were sent using an automatic telephone dialing system ("ATDS') that has the capacity to store and produce telephone numbers to be called, using a random or sequential number generator and to dial/text such numbers.

36. Plaintiff did not want or need debt relief. However, in order to cease harassment from the automated text messages, Plaintiff called the number stated in paragraph 30 and 31 to identify who was behind the text messages.

37.    The text messages were sent to Plaintiff at the authorization from Defendant Voci.

38. On December 9, 2022, Plaintiff called and was connected to an agent who answered by saying "Relieve financial, how can I help you?" The agent did not properly identify himself or the company for whom he worked. The agent then proceeded to solicit Plaintiff for debt relief services.  The agent asked Plaintiff about his debt, social security number, address, and other qualifying questions.

39. On December 12, 2022, the same agent in paragraph 36 called Plaintiff to review the information. After reviewing the information, the agent transferred Plaintiff to another agent named "Douglas" who answered with "Elite financial services".

40. Douglas reviewed Plaintiff's information and sent Plaintiff an email with a contract that confirmed that Defendant Elite was behind the automated text messages.

41. Table below displays the automated text messages and call made to Plaintiff by Defendants:

TABLE A:

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1. | 08/09/2022 | 12:24 PM | 866-668-6161 | Text |
| 2. | 12/09/2022 | 8:56 AM | 866-688-6161 | Text |
| 3. | 12/12/2022 | 9:35 AM | 781-233-9300 | Solicitation Call |

42. On December 13, 2022, Plaintiff searched the Texas Secretary of State website https://direct.sos.state.tx.us/telephone/telephonesearch.asp. and did not find a valid Texas

Solicitation Registration for Defendants as required by the Texas Business and Commerce Code 302.101

43. Defendants do not qualify for an exemption under TX Bus. Com. Code 301.101.

44. The automated text messages or call from Defendants were not made to Plaintiff for emergency purposes.

45. Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful automated text messages, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful automated text messages.

46. Plaintiff has limited data storage capacity on her cellular telephone. Incoming telemarketing calls consumed part of this capacity.

## PERSONAL LIABILITY OF DEFENDANTS JASON F. VOCI

47.     Defendant Voci is personally liable under the "participation theory" of liability because he had direct, personal participation in the conduct that violated the TCPA, or knowingly authorized such conduct. See, e.g., *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12- 22330-CIV, 2015 WL 3644598, at *3 (S.D. Fla. June 10, 2015).

48.     Voci knew of Defendant Elite's TCPA violations, and specifically directed employees and/or agents of Elite to make those violations despite being aware of the prohibition of using automated text messages.

49.     Voci authorized and oversaw each of Elite's telemarketing processes and automated messages which were made on behalf of Elite.

50.     Voci knew, or should have known, that Plaintiff's telephone number was on the National

Do-Not-Call Registry long before the automated text messages were sent, and despite this fact,

Voci made the decision to solicit Plaintiff's cell phone number without his prior express written

consent.

51.     Voci makes the day-to-day decisions for Elite.

52.     Voci made the decision to target Texas telephone numbers for telemarketing purposes

using auto mated messages, including Plaintiff's number

53.     Voci is also personally liable because he was responsible for ensuring Elite's agents

and/or employees do not solicit consumers with whom no prior business relationship existed.

54. "If the officer directly participated in or authorized the statutory violation, even though acting

   on behalf of the corporation, he may be personally liable.  See *United States v Pollution Serv.*

   *Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

55. The "well-settled" tort rule provides that "when corporate officers directly participate in or

   authorized the commission of a wrongful act, even if the act is done on behalf of the

   corporation, they may be personally liable." *General MotorsClore Acceptance Corp. v. Bates*,

   954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the

   general [tort] rule is that the officer to be held personally liable must have some direct, personal

   participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful

   conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct*

   *Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical*

   *Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp.

   2d 892 (W.D. Tex. 2001)

56. Quoting Texas v. American Blastfax:

The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

57. The Same Court held that corporate officers were also personally liable for DTPA violations

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious or fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

10

58. At all times material to the Complaint, acting alone or in concert with others, Defendant Voci has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Elite, including the acts or practices set forth in this Complaint.

59. Defendant Voci is the principal director and operator of Defendant Elite, and control the day-to-day operations of Elite, and directed their employees, agents, salespersons, and solicitors to make TCPA violating automated text m

60. Defendant Voci knew the collection of fees before rendering service is illegal.

61. Defendant Voci is not a mere bystander. He is the mastermind that schemed, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

62. Defendant Voci is aware, Defendant's conduct violated the TCPA and Tex. DPTA and refused to alter their behavior. Defendant Voci is the sole director of Certify, and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, they have taken no steps to stop the behavior because the behavior benefits them financially. Defendant Voci breaks the law with his eyes and pocketbooks wide open.

63. Defendant Voci, should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via Tex. DTPA because they committed conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

64. Defendant Voci should be held personally liable because to do otherwise would simply allow him to simply dissolve Elite and set up a new corporation and repeat their conduct. This would result in both the TCPA and DTPA being unenforceable.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE TEXT MESSAGES

65. Defendants automated text messages harmed Plaintiff by causing the very harm that Congress

sought to prevent—a "nuisance and invasion of privacy."

66. Defendants automated text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

67. Defendants automated text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

68. Defendants automated text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

69. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of her cell phone.

## Plaintiff's cell phone is a residential number

70. The calls were to Plaintiff's cellular phone ending in -4604 which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff maintains no landline phones at her residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has her cell phone registered in her personal name, pays the cell phone from her personal accounts, and the phone is not primarily used for any business purpose.

## Violations of the Texas Business and Commerce Code § 302.101

71. The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

72. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.


## FIRST CLAIM FOR RELIEF

### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent
### (Against All Defendants)

73. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

74. Defendants and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least two (2) times by placing non-emergency telemarketing text messages to Plaintiff's cellular telephone number using an automatic telephone dialing system without prior express written consent.

75. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

76. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

77. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing calls to cellular telephone numbers without the prior express written consent of the called party.


## SECOND CLAIM FOR RELIEF

### Violations of the TCPA "Sales/DNC" Prohibitions 47 C.F.R. § 64.1200(c)

### (Against Defendant)

85. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

86. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

87. Plaintiff was statutorily damaged at least two (2) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

88. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violation of 47 U.S.C. § 227(c)(3)(F).

### THIRED CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 302.101

96.  Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

97. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101,** by making non-registered solicitation calls to Plaintiff's cellular telephone number.

98. Plaintiff is entitled to an award of up to $5,000 in damages for each violation of Texas Business and Commerce Code 302.302(a).

99. Plaintiff is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees. Texas Business and Commerce Code 302.302(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff BRANDON CALLIER prays for judgment against the Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial.

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law.

C. An award of $1500 per text message in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the individual and corporation for 2 text messages.

D. An award of $1500 per text message in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the individual and corporation for 2 text messages.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the individual and corporation for 1 call.

G. An award to Mr. Callier of damages, as allowed by law under the TCPA;

H. An award to Mr. Callier of interest and costs, as allowed by law and equity

I. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

January 3, 2023,                              Respectfully submitted,

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com

16